UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
WILLIAM GUERRERO, Individually and
on Behalf of all others Similarly Situated,

                   Plaintiff,

                  - against -

GC SERVICES LIMITED PARTNERSHIP,

                   Defendant.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 15-7449 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     P<small>RELIMINARY</small> S<small>TATEMENT</small>

      Plaintiff William Guerrero ("Plaintiff" or "Guerrero") brings the instant action on behalf

of himself and all others similarly situated against Defendant GC Services Limited Partnership

("Defendant" or "GCS") alleging violations arising under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See generally* Complaint ("Compl.") [DE 1]. Presently

before the Court is Plaintiff's motion to amend the Complaint. *See* DE 31. For the reasons set

forth below, Plaintiff's motion to amend is GRANTED.

II.     B<small>ACKGROUND</small>

     **A. The Proposed Amended Complaint**

      The following information has been taken directly from Plaintiff's Proposed Amended

Complaint. All facts are assumed to be true for purposes of deciding the motion to amend and

are construed in a light most favorable to the Plaintiff as the moving party.[1] *See, e.g.*, *LaFaro v.*

---

[1]     The Court points out that the proposed Amended Complaint ("Am. Compl.") [DE 32-1]
is substantially similar in scope to the initial Complaint in this action. *Compare* Compl. *with*

*N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012); *Alkhatib v. New York Motor Group, LLC*, No. CV 13-2337, 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) (quoting *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014)) (noting that the court "is required to accept the material facts alleged in the amended [pleading] as true and draw reasonable inferences in the [movant's] favor").

Plaintiff, an individual residing in the State of New York, is a "consumer" as that term is defined by the FDCPA since he is "allegedly obligated to pay a debt." Am. Compl. ¶¶ 5-6.[2] Defendant, an entity with its principal place of business in Houston, Texas, is a "debt collector" within the meaning of the FDCPA since it is primarily engaged in "a business the principal purpose of which is the collection of debts" and because it "uses an instrumentality of interstate commerce or the mails" in order to engage in the direct or indirect collection of debts. *Id.* ¶¶ 7-9.[3] At some point prior to the filing of the instant action, Plaintiff incurred a debt that was

---

Am. Compl. The primary differences in the proposed Amended Complaint are: (a) the inclusion of additional facts in Counts 1 through 3; (b) the addition of Counts 4 and 5, which appear to assert claims based upon the same statutory sections as Counts 1 through 3; (c) the addition of Count Six alleging actual damages; and (d) removal of the class claim. As such, the Court dispenses with a recitation of the facts as alleged in the initial Complaint.

[2]      The term "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3)

[3]      The term "debt collector" as set forth in the FDCPA, means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

primarily for "personal, family or household purposes." *Id.* ¶ 10.  Thereafter, Plaintiff was deemed to have defaulted and the debt was "assigned or otherwise transferred to Defendant for collection." *Id.* ¶ 11-12.  As part of its efforts to collect the debt, Defendant sent Plaintiff a letter on October 2, 2015.  *Id.* ¶ 13, Ex. 1 (October 2, 2015 Collection Letter).  Plaintiff asserts that Defendant's letter violated the FDCPA in certain respects.  *Id.* ¶ 15.  Specifically, Counts One, Three and Four allege violations of 15 U.S.C. § 1692g, which requires that certain disclosures be provided to the debtor in the debt collector's initial communication, or within 5 days thereafter, *see generally* Am. Compl.; 15 U.S.C. § 1692g, while Counts Two and Five allege violations of 15 U.S.C. § 1692e, which prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt.  *See generally* Am. Compl.; 15 U.S.C. § 1692e.  In addition, Count Six alleges that Plaintiff has stated a claim for actual damages.  *See* Am. Compl. ¶¶ 118-127.  Because each factual allegation is inextricably connected with each enumerated count, the Court will briefly summarize the salient facts contained in each count of the Amended Complaint.

Turning to Count One, Plaintiff asserts that Defendant's October 2, 2015 letter violated 15 U.S.C. § 1692g by failing to "clearly" and "explicitly" set forth "the name of the creditor to whom the debt is owed."  Am. Compl. ¶¶ 18-24.  Although the letter states "YOU OWE: SPRINT," Am. Compl., Ex. 1 (emphasis in original), Plaintiff states that he:  (1) "is unaware of what the alleged debt represents;" (2) "does not owe 'Sprint;'" (3) "does not have an account with any entity named 'Sprint;'" (4) "never contracted with an entity named 'Sprint;'" and (5) does not owe any money to an entity named 'Sprint.'"  *Id.* ¶¶ 25-40.  In addition, Plaintiff claims that "there are more than one hundred (100) disparate entities registered in New York that begin

their legal name with 'Sprint'" and therefore "[t]he least sophisticated consumer would likely be confused as to which of the more than one hundred (100) disparate entities registered in New York that begin their legal name with 'Sprint' is the alleged creditor to whom the debt is owed." *Id*. ¶¶ 32-34. Therefore, because "Defendant failed to explicitly [and] clearly state the name of the creditor to whom the debt is owed," it violated 15 U.S.C. § 1692g. *Id*. ¶¶ 39-45.

With respect to Count Two, Plaintiff contends that the statement "YOU OWE: SPRINT," Am. Compl., Ex. 1 (emphasis in original), is "false" since "Plaintiff does not owe any money to an entity named 'Sprint'" and that "[t]he least sophisticated consumer would likely be deceived in a material way by Defendant's conduct." *Id*. ¶¶ 53-57. As such, Plaintiff states that the statement violates 15 U.S.C. § 1692e by using a "false, deceptive and misleading representation in its attempt to collect a debt." *Id*. ¶ 64. In addition, Plaintiff claims that "[b]ecause the collection letter . . . is reasonably susceptible to an inaccurate reading, as described in the First Count [of the Amended Complaint], it is deceptive within the meaning of 15 U.S.C. § 1692e." *Id*. ¶ 52.

As to Count Three, Plaintiff claims that the letter violated 15 U.S.C. § 1692g(a)(3) due to "Defendant's addition of the words 'AFTER YOUR RECEIPT OF GC SERVICES' INITIAL WRITTEN NOTICE TO YOU CONCERNING THIS DEBT,'" which "would lead the least sophisticated consumer to believe there was a prior initial written communication from Defendant." *Id*. ¶ 72. Specifically, Plaintiff claims that this statement, when read together with the surrounding language, would "confuse the least sophisticated consumer concerning the time frame to dispute the debt or seek validation of the debt" and would result in the "least sophisticated consumer [being] uncertain as to her rights." *Id*. ¶¶ 73-77. As such, "Defendant

has violated § 1692g as the above-referenced language overshadows the information required to be provided by that Section." *Id.* ¶ 83.

Turning to Count Four, Plaintiff alleges that although the letter states there is a "Balance Due of $807.04," Am. Compl., Ex. 1, Defendant has run afoul of 15 U.S.C. § 1692g(a)(1) by failing to convey the amount of the debt clearly — because the letter "fails to disclose whether the balance may increase due to interest and fees." Am. Compl. ¶¶ 84-89, 104. Specifically, Plaintiff claims that "[t]he least sophisticated consumer would be confused as to how she could satisfy the debt" since a consumer "might believe she could pay the debt in full by remitting the sum stated in the letter at any time after she received the letter" but that "such a belief may or may not be correct, as Defendant has failed to disclose whether the balance may increase due to interest and fees." *Id.* ¶¶ 90-92. In light of this alleged ambiguity, Plaintiff contends that "Defendant has violated § 1692g as it failed to clearly, explicitly and unambiguously convey the amount of the debt." *Id.* ¶ 105.

Similarly, Count Five alleges that the manner in which the letter sets forth the amount of the debt also violates § 1692e because "Defendant's letter [ ] fails to disclose whether the balance may increase due to interest and fees" and therefore "[t]he least sophisticated consumer would likely be deceived by Defendant's conduct." *Id.* ¶¶ 106-114. Consequently, Plaintiff claims that "Defendant has violated § 1692e by using a false, deceptive and misleading representation in its attempt to collect a debt." *Id.* ¶ 117.

Finally, in Count Six, Plaintiff appears to be claiming actual damages based upon his assertions that Defendant's actions caused him to: (1) "be distracted from his work;" (2) "lose time at work;" (3) "waste time;" and (4) "fight with his wife." *Id.* ¶¶ 118-127.

## B. Relevant Procedural History

Plaintiff instituted this action on December 23, 2015 by filing a Complaint. DE 1. A summons was issued to Defendant on January 5, 2016 and it was returned executed on January 14, 2016. DE 6. Thereafter, on February 4, 2016, Defendant filed its Answer. DE 9. On February 17, 2016, Defendant amended its Answer. DE 12. Subsequently, on June 1, 2016, the Court held an Initial Conference during which it noted that Plaintiff sought leave to file an Amended Complaint and directed the parties as follows:

> The May 25, 2016 letter motion to Judge Hurley seeking a pre-motion conference [DE 24] for purposes of leave to file a First Amended Complaint is deemed MOOT. In cases that are assigned to Judge Hurley, the assigned Magistrate Judges handle motions to amend. Based on today's discussion, the Court directed plaintiff's counsel to provide defendant's counsel with a copy of the proposed First Amended Complaint by June 13, 2016. Defendant's counsel will then have until June 20, 2016 to review the amended pleading and to communicate with plaintiff's counsel whether the defendant can consent to the amended pleading. If so, the parties are directed to file an appropriate Stipulation on ECF embodying their agreement by June 24, 2016.
>
> If the defendant is unable to consent, then the Court has set the following briefing schedule in consultation with the parties:
>
> • Plaintiff's opening papers and memorandum of law must be served and filed by July 8, 2016;
>
> • Defendant's opposition papers and memorandum of law have to be served and filed by July 18, 2016;
>
> • Plaintiff's reply papers, if any, must be served and filed by July 25, 2016.

DE 27. On July 7, 2016, Plaintiff filed the instant motion seeking to amend the Complaint. DE 31-33. On July 18, 2016, Defendant filed its opposition [DE 36] and on July 20, 2016, Plaintiff filed his reply. DE 37. In addition, on January 11, 2017, Plaintiff filed a Notice of Supplemental Authority. DE 38. The Court now turns to the instant motion.

## III. PLAINTIFF'S MOTION TO AMEND

### A. Applicable Law

#### 1. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* FED. R. CIV. P. 15(a); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v. Hornbeck Offshore Operators, LLC*, No. 11 Civ. 5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar. 17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8 (E.D.N.Y. Jan. 6, 2014). Leave to amend is within the court's discretion. *Krupski v. Costa Crociere S. p. A.*, 130 S . Ct. 2485, 2489 (2010) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. Cty. of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend"). A court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting FED. R. CIV. P. 15(a)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004) (Rule 15(a) "provides for a liberal amendment of pleadings."). "Amendments are generally favored because they tend to facilitate a proper decision on the merits." *MHANY Mgmt.*, 843 F. Supp. 2d at 340; *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (same) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

This liberal standard only requires that the movant provide "colorable grounds" for the relief sought. *See UMG Recordings, Inc. v. Lindor*, No. CV-05-1095, 2006 WL 3335048, at *2 (E.D.N.Y. Nov. 9, 2006); *Alkhatib v. New York Motor Group, LLC*, No. CV 13-2337, 2015 WL 3507340, at *7 (E.D.N.Y. June 3, 2015) ("If the movant has at least colorable grounds for relief, justice . . . requires that the court grant leave to amend the complaint.") (quoting *Sokolski*, 178 F.R.D. at 396); *Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872, 877 (W.D.N.Y. 1992). However, where a proposed amendment is clearly frivolous or advances a claim that has no merit, the amendment is considered futile and will be rejected. *See UMG*, 2006 WL 3335048, at *2; *Slavin v. Benson*, 493 F. Supp. 32, 33 (S.D.N.Y. 1980). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners, Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *see Lotito v. Recovery Associates Inc.*, No. 13-CV-5833, 2014 WL 4659464, at *9 (E.D.N.Y. Sept. 17, 2014); *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013) ("A proposed amendment would be futile when it would not survive a 12(b)(6) motion to dismiss."); *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012). In addition, "[a]n amendment to the pleadings may be deemed futile if even once the proposed amendment is granted, the plaintiff would lack standing to bring the claim." *U.S. Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130, 2010 WL 3419666, at *4 (E.D.N.Y. Aug. 27, 2010); *see Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 378 (E.D.N.Y. 2009); *Davis v. Abrams*, No. 13-CV-1405, 2014 WL 279807, at *7 n. 9 (E.D.N.Y. Jan. 23, 2014) (recognizing that where plaintiff's "claims are . . . ones for which they otherwise lack standing, it is clear that amendment would be futile."); *see also All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 570 F. Supp. 2d 533, 539

(S.D.N.Y. 2008), *aff'd*, 651 F.3d 218 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013) ("As a threshold matter, the Court must first determine whether the Associations have standing to bring this action, as amending the complaint would otherwise be futile. An amendment is futile if the court lacks jurisdiction over the amended pleading, or if it would otherwise be subject to a successful motion to dismiss."). It is the opposing party who bears the burden to establish that an amendment would indeed be futile. *See Balk* 2013 WL 6990767, at *5; *Alkhatib*, 2015 WL 3507340, at *7; *Blaskiewicz v. Cty. Of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1988)).

In assessing whether the proposed amendment asserts colorable grounds for relief, a court "is required to adopt the same analysis as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the [Federal Rules of Civil Procedure]." *UMG*, 2006 WL 3335048, at *2; *Balk*, 2013 WL 6990767, at *5; *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992) (recognizing the general rule that in order to determine whether the amended pleading puts forth colorable grounds the court should apply the standards of Rule 12(b)(6)); *Chan v. Reno*, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996). Therefore, in deciding whether an amended pleading asserts colorable claims or defenses, the Court "is required to accept the material facts alleged in the amended [pleading] as true and draw reasonable inferences in the [movant's] favor." *Alkhatib*, 2015 WL 3507340, at *7 (quoting *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014)); *see Panther Partners, Inc.*, 681 F.3d at 119 ("In assessing whether the proposed [amended] complaint states a claim, [courts] consider the proposed amendments along with the remainder of the complaint, . . . accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to

determine whether the allegations plausibly give rise to an entitlement to relief."). Further, similar to its analysis of a motion to dismiss pursuant to Rule 12(b)(6), courts will generally not consider matters outside the pleadings on a motion to amend. *See Snoussi v. Bivona*, No. 05 CV 3133, 2010 WL 3924255, at *9 (E.D.N.Y. Feb. 17, 2010), *report and recommendation adopted*, 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010); *Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Ben. Funds v. A to E, Inc.*, 64 F. Supp. 3d 435, 438 (E.D.N.Y. 2014) ("[T]he Court notes that it may not consider the documents the Plaintiff attached in support of its motion to amend, even if, as the Defendant argues, they undermine the Plaintiff's theory of alter ego or single employer liability.").

In performing this analysis, a court is not required to make a final determination on the merits of a proposed claim or defense, but instead, must only "satisfy itself that [the claim or defense] is colorable and not frivolous." *UMG*, 2006 WL 3335048, at *2 (quoting *T & N PLC v. Fred S. James & Co, of New York*, 1991 WL 190581, at *2 (S.D.N.Y. Sept. 16, 1991)). Therefore, the moving party "is not required to 'establish a probability it would prevail on the merits in order for the court to grant its motion to amend . . . [i]nstead . . . defendant is merely required to assert proposed amendments which are not frivolous on their face.'" *UMG*, 2006 WL 3335048, at *2 (quoting *T & N PLC*, at *2) *see UMG*, 2006 WL 3335048, at *3 (declining to address the merits of the proffered affirmative defenses on a motion to amend).

Notwithstanding the above, leave to amend a pleading may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party. . . ." *Balk*, 2013 WL 6990767, at *5; *see Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011. To determine what constitutes sufficient prejudice to warrant denial of a party's request to

amend its pleading, "the Court considers whether the amendment would:  (i) require the

opponent to expend significant additional resources to conduct discovery and prepare for trial;

(ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a

timely action in another jurisdiction."  *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2013

WL 1703529, at *4 (E.D.N.Y. Apr. 19, 2013) (internal quotations omitted); *see Block v. First*

*Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993); *Kirschenbaum v. Federal Ins. Co.*, 505 B.R.

126, 132 (E.D.N.Y. 2014).

The party opposing the motion to amend carries the burden to establish that one or more

of the above factors would cause it substantial prejudice thus necessating denial of the motion.

*See Kirschenbaum* 505 B.R. at 132; *Alkhatib*, 2015 WL 3507340, at *7; *Golden Trade*, 143

F.R.D. at 506 ("[T]he party opposing the motion [to amend] must demonstrate that it would be

*substantially and unfairly* prejudiced by the amendment.") (emphasis added).  Further, courts

have determined that time, money and effort expended in defending a lawsuit does not rise to the

level of prejudice necessary to defeat a motion to amend.  *See Block*, 988 F.2d at 351 (noting that

the time, effort and money expended fail to rise to the level of "substantial prejudice" necessary

to defeat a motion to amend); *Kirschenbaum* 505 B.R. at 132; *S.S. Silverblatt, Inc. v. E. Harlem*

*Pilot Block-Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 43 (2d Cir. 1979) ("[T]he burden of

undertaking discovery, which Chemical would have shouldered had the proposed amendment

been incorporated . . . hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor

of permitting the parties to obtain an adjudication of the merits.").[4]

---

[4]     The more exacting "good cause" analysis pursuant to Rule 16(b) is not applicable in this case since Plaintiff filed its Motion to Amend by the August 19, 2016 deadline set forth in the Initial Conference and Case Management Orders.  *See* DE 28; *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (holding that the more exacting "good cause" standard under Rule 16(b) versus the more lenient standard under Rule 15(a) applies where a motion to amend a pleading is sought after the deadline stated in the court's published scheduling order).

## 2. *FDCPA Legal Principles*

Congress enacted the FDCPA based upon "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a); *see* S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (recognizing that "debt collection abuse by third party debt collectors is a widespread and serious national problem. Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.). In light of these evils, the FDCPA's over-arching purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting § 1692(e)); *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed. App'x 89, 93 (2d Cir. 2012) (recognizing that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors[,] . . . with the purpose of limiting the suffering and anguish often inflicted by independent debt collectors."). "To further these ends, the FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection.'" *Vincent*, 736 F.3d at 96 (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)); *see Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015). In order for consumers

to vindicate their rights under the statute, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); *see* 15 U.S.C. § 1692k. Thus, "the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson*, 516 F.3d at 91.

Where a statutory violation has been established, the FDCPA permits recovery equal to a plaintiff's actual damages and/or statutory damages totaling no more than $1,000. 15 U.S.C. § 1692k(a)(1)-(2)(A). In the case of a class action, the statute allows "(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). In addition, where a plaintiff prevails, the court may award "the costs of the action, together with a reasonable attorney's fee. . . ." 15 U.S.C. § 1692k(a)(3). Further, "[b]ecause the FDCPA is 'remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.'" *Vincent*, 736 F.3d at 98 (quoting *N.C. Freed Co. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973)); *see Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 478 (E.D.N.Y. 2016); *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014); *Fields v. W. Mass. Credit Corp.*, 479 F. Supp. 2d 287, 290 (D. Conn. 2007) ("Generally, the FDCPA provisions are liberally construed in favor of consumers."); *see also Pipiles v. Credit Bureau of Lockport, Inc.*,

886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices.").

The FDCPA "is a strict liability statute and a single violation is sufficient to establish liability." *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002, 2013 WL 4851709, at *2 (E.D.N.Y. Sept. 10, 2013); *see Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 133, 135 (2d Cir. 2010); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). In order to assert a violation of the FDCPA, a plaintiff must allege that: "(1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector;' and (3) the defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.*, No. 13-CV-1006, 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015) (citing *Katz v. Sharinn & Lipshie*, No. 12-CV-2440, 2013 WL 4883474, at *1 (E.D.N.Y. Sep. 11, 2013)); *see Barshay v. Specified Credit Assocs. I, Inc.*, No. CV 15-1044, 2016 WL 3578993, at *2 (E.D.N.Y. Jun. 3, 2016).

In determining whether a collection letter violates the FDCPA, courts in the Second Circuit utilize "the least sophisticated consumer" standard. *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008); *Sorel v. Capital One Servs., LLC*, No. 3:11-CV-703, 2012 WL 3596487, at *4 (D. Conn. Aug. 20, 2012); *see Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007); *Clomon*, 988 F.2d at 1318 (Section 1692e); *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300 (E.D.N.Y. 2005) (Section 1692g); *Turner v. Asset Acceptance, LLC*, 302 F. Supp. 2d 56, 58 (E.D.N.Y. 2004) (Section 1692e); *Chavez v. MCS Claim Servs., Inc.*, No. 15-CV-3160, 2016 WL 1171586 (E.D.N.Y. Mar. 23, 2016) ("The critical question is therefore whether the notice fails to convey the required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message.") (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001));

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). In applying the "least sophisticated consumer standard," courts are required to "determine how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Dewees*, 506 F. Supp. at 132; *see Sparkman*, 374 F. Supp. 2d at 300. Thus, in dispatching its obligation, "[t]he court must analyze 'collection letters from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences.'" *Dewees*, 506 F. Supp. at 132 (quoting *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 156 (E.D.N.Y. 2005)) ("The least sophisticated consumer standard therefore ensures the protection of all consumers, but also protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.") (internal quotation omitted); *see Daly v. Capital Mgmt. Servs., LP*, No. 15-CV-364, 2015 WL 4662759, at *3 (W.D.N.Y. Aug. 6, 2015) (noting that "courts are cautioned to apply the least sophisticated consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices") (internal quotation omitted); *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233-34 (2d Cir. 2012); *Clomon*, 988 F.2d at 1319.

"[T]he Second Circuit has indicated that the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one." *Berger v. Suburban Credit Corp.*, No. 04 CV 4006, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237–38 (2d Cir. 1998)); *Sorel*, 2012 WL 3596487, at *4; *Quinteros v. MBI Associates, Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) ("because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law") (quoting *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)); *see also Diaz v. Residential Credit Sols., Inc.*, 965

F. Supp. 2d 249, 256 (E.D.N.Y. 2013) ("Although courts are divided on whether [a] breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss.") (internal citation omitted); *Vega v. Credit Bureau Enterprises*, No. CIV A02 CV1550, 2005 WL 711657, at *9 (E.D.N.Y. Mar. 29, 2005) (noting that the least sophisticated consumer standard is a question of law that could be decided in the context of a Rule 12(c) motion and recognizing that "how the least sophisticated consumer would interpret the defendant's form debt collection letter can be determined without the aid of expert testimony at trial.").

### B. Application to the Facts

Defendant opposes Plaintiff's motion as futile on the sole basis that "Plaintiff has failed to allege any concrete harm resulting from the alleged *procedural* violations of the FDCPA he claims." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a First Amended Complaint ("Def.'s Opp'n") [DE 36] at 7 (emphasis in original). Specifically, Defendant argues that in order to meet Article III's standing requirement, "Plaintiff must allege sufficient facts to explain how Defendant's alleged violations of the technical procedural requirements of the FDCPA cause Plaintiff's various forms of harm alleged [and that] [w]here, as here, Plaintiff only alleges bare, procedural violations of the federal statute, Plaintiff cannot establish a sufficiently concrete injury to have standing." *Id*. at 11.

In his reply, Plaintiff states that contrary to Defendant's position, Plaintiff has satisfied Article III's standing requirement because "Plaintiff alleges Defendant violated *his* statutory rights, and that such violations affected *him* in a personal and individual way. Further, Plaintiff claims that the effects of Defendant's violations, while mostly intangible (non-monetary), actually existed and some still exist." Reply Memorandum of Law in Further Support of

Plaintiff's Motion for Leave to File a First Amended Complaint ("Pl.'s Reply")    [DE 37] at 8.

As such, Plaintiff states that he has "sufficiently alleged an injury that is both 'particularized' and 'concrete'" and has thus established the requisite standing to file his Amended Complaint. *Id*. at 8.

In light of the issue presented, the Court begins its analysis by setting forth the applicable law prior to and following the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).

### 1. *Whether Plaintiff's Amended Complaint is Futile on the Basis that he Lacks the Requisite Article III Standing in the Wake of Spokeo*

#### a. The Law of Standing

##### i. *Generally*

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution [, and] the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)). "The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention. It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 517-18, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975). *See Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009) ( "[S]tanding . . . is intended to be a

threshold issue at least tentatively decided at the outset of the litigation."); *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci* ), 126 F.3d 380, 387–88 (2d Cir. 1997).

In order to establish the requisite standing, "an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1140 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)); *see Cooper v. U.S. Postal Serv.*, 577 F.3d at 489 ("It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'") (quoting *Kendall v. Employees Ret. Plan of Avon Prods.,* 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park*, *N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant.") (internal citation omitted).

To satisfy Article III's "injury-in-fact" requirement, a plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). It follows that, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499, 95 S. Ct. at 2205, 45 L. Ed. 2d 343; *Baur*, 352 F.3d at 632 ("[I]n evaluating whether the alleged injury is concrete and particularized, we assess whether the injury 'affect[s] the plaintiff in a personal and

individual way,' to confirm that the plaintiff has a personal stake in the controversy and avoid

having the federal courts serve as 'merely publicly funded forums for the ventilation of public

grievances or the refinement of jurisprudential understanding[.]'") (quoting *Lujan*, 504 U.S. at

560 n. 1, 112 S. Ct. 2130 and *Valley Forge*, 454 U.S. at 471–72, 102 S. Ct. 752).  However, "[a]

plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1)

injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would

cause plaintiff to be an effective advocate for the third party's rights, and (3) some hindrance to

the third party's ability to protect his or her own interests." *Camacho v. Brandon*, 317 F.3d 153,

159 (2d Cir. 2003) (internal quotation marks omitted).  The burden at all times remains with the

movant to clearly allege facts that establish the necessary standing to invoke judicial resolution

of a dispute.  *See Staten v. Vill. of Monticello*, No. 14-CV-4766, 2015 WL 6473041, at *6

(S.D.N.Y. Oct. 26, 2015); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,

915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013); *see also Thompson v. Cty. of Franklin*, 15 F.3d 245,

249 (2d Cir. 1994).

In addition, although injury-in-fact also requires that a plaintiff show an "'invasion of a

legally protected interest,'" *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quoting

*Lujan*, 504 U.S. at 560, 112 S. Ct. 2130), such an interest may be based on "statutes creating

legal rights, the invasion of which creates standing."  *Warth*, 422 U.S. at 500, 95 S. Ct. at 2206,

45 L. Ed. 2d 343.  Indeed, "Congress's authority to create new legal interests by statute, the

invasion of which can support standing, is beyond question."  *Strubel*, 842 F.3d at 188 (citing

*Warth*, 422 U.S. at 500, 95 S. Ct. at 2206, 45 L. Ed. 2d 343); *see Lujan*, 504 U.S. at 578, 112

S. Ct. 2130 (recognizing Congress's authority to "elevat[e] to the status of legally cognizable

injuries concrete, *de facto* injuries that were previously inadequate in law").  However, the

creation of a statutory interest does not operate to nullify Article III's standing requirements —

to the contrary — where a plaintiff relies on a codified statutory right to establish standing, he

must still show the "invasion of a legally protected interest" that is "concrete and particularized"

and "actual or imminent, not conjectural or hypothetical." *Strubel*, 842 F.3d at 188 (internal

citation omitted); *see Bautz v. ARS Nat'l Servs., Inc.*, No. 16-CV-768, 2016 WL 7422301, at *4

(E.D.N.Y. Dec. 23, 2016).

## ii. *Analysis of Standing After Spokeo*

Recently, the Supreme Court addressed the requirements of standing in *Spokeo v. Robins*,

in which the Court was tasked with determining whether the respondent had standing to assert a

claim arising under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq. Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540, 1544, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).

Specifically, the respondent sought redress under the FCRA based upon petitioner's

dissemination of erroneous information which had been compiled by its web-based "people

search engine." *Id*.[5]

After reviewing the general requirements to assert standing, *see id*. at 1547, 194 L. Ed. 2d

635, the Supreme Court turned its attention to the injury-in-fact requirement and emphasized that

"Congress cannot erase Article III's standing requirements by statutorily granting the right to sue

to a plaintiff who would not otherwise have standing." *Id*. at 1547-48, 194 L. Ed. 2d 635

---

[5] "Spokeo . . . operates a Web site that allows users to search for information about other individuals by name, e-mail address, or phone number. In response to an inquiry submitted online, Spokeo searches a wide spectrum of databases and gathers and provides information such as the individual's address, phone number, marital status, approximate age, occupation, hobbies, finances, shopping habits, and musical preferences. According to Robins, Spokeo markets its services to a variety of users, including not only 'employers who want to evaluate prospective employees,' but also 'those who want to investigate prospective romantic partners or seek other personal information.' Persons wishing to perform a Spokeo search need not disclose their identities, and much information is available for free." *Id*. at 1546, 194 L. Ed. 2d 635.

(internal citations omitted). Nevertheless, the Court in *Spokeo* recognized that in some cases, intangible injuries could be deemed sufficiently concrete for purposes of establishing standing and that Congress "is well positioned to identify harms that meet minimum Article III requirements. . . ." *Id*. at 1549, 194 L. Ed. 2d 635. Accordingly, even where Congress has "identif[ied] and elevat[ed] intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. Therefore, even where a statutory violation is alleged, "Article III standing requires [the presence of] a concrete injury[.]" *Id*. From these principles, the Supreme Court concluded that "a bare procedural violation [of a statute], divorced from any concrete harm, [is insufficient to] satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing") and *Lujan*, 504 U.S. at 572, 112 S. Ct. 2130)).

Notwithstanding the conclusion regarding "bare procedural violations" of statutory rights, the court in *Spokeo* nevertheless recognized that in certain circumstances "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id*. at 1549-50, 194 L. Ed. 2d 635 (emphasis in original) (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) (holding that two advocacy organizations'

failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")).

Applying these principles to the facts before it, the Supreme Court concluded that "[o]n the one hand, Congress [in passing the FCRA] plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation [of the statute]." *Spokeo*, 136 S. Ct. at 1550, 194 L. Ed. 2d 635. However, "[b]ecause the Ninth Circuit . . . did not address . . . whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement," the Supreme Court remanded the case to the Ninth Circuit to address this issue. *Id.*

Significantly, *Spokeo* did not create a sea-change in Article III standing jurisprudence. Rather, it clarified the proposition that

> an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest. But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest. *Id.*

*Strubel*, 842 F.3d at 190 (citing *Spokeo* 136 S. Ct. at 1549, 194 L. Ed. 2d 635); *see Zirogiannis v. Seterus, Inc.*, No. 15CV5884, 2016 WL 7410541, at *5 (E.D.N.Y. Nov. 28, 2016); *Bautz*, 2016 WL 7422301, at *7. As such, "*Spokeo* did not disturb the Supreme Court's prior precedent recognizing that 'Congress may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Bautz*, 2016 WL 7422301, at *7 (quoting *Spokeo*, 136 S. Ct. at 1549). "Thus, in cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim without need to allege a 'material

risk of harm' because the infringement of that right constitutes, in and of itself, a concrete injury." *Bautz*, 2016 WL 7422301, at *8; *see, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed. App'x 990, 995 & n.2 (11th Cir. 2016) (per curiam); *Zirogiannis*, 2016 WL 7410541, at *5-6; *Matera v. Google Inc.*, No. 15–CV–04062, 2016 WL 5339806, at *11–12 (N.D. Cal. Sept. 23, 2016); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13–CV–1349–J–34PDB, 2016 WL 4369424, at *8 (M.D. Fla. Aug. 16, 2016); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *5 (N.D. Ill. Aug. 11, 2016).

With these general legal principles in mind, the Court turns its attention to whether Plaintiff has stated a concrete injury sufficient to meet the injury-in-fact requirement of standing based upon Defendant's alleged statutory violations of the FDCPA.

### b. Plaintiff Has Alleged a Concrete Injury Based upon the Violation of a Substantive Right Afforded by the FDCPA

Defendant contends that in order to satisfy the injury-in-fact requirement, "Plaintiff must allege sufficient facts to explain how Defendant's alleged violations of the *technical procedural requirements* of the FDCPA cause Plaintiff's various forms of harm alleged [and that] [w]here, as here, Plaintiff only alleges *bare, procedural violations* of the federal statute, Plaintiff cannot establish a sufficiently concrete injury to have standing." Def.'s Opp'n at 11 (emphasis added). Thus, Defendant, relying on the reasoning set forth in *Spokeo*, is proceeding from the premise that the statutory requirements set forth in 15 U.S.C. §§ 1692e and 1692g constitute only "technical procedural requirements" which would require Plaintiff to allege a 'material risk of harm' to the underlying interest(s) that Congress sought to protect by enacting the apposite statute." *Bautz*, 2016 WL 7422301, at *7; *see Strubel*, 842 F.3d at 190. However, Defendant's reliance on *Spokeo* —which analyzed sections of the FCRA — for the proposition that the sections of the FDCPA at issue here constitute nothing more than "technical procedural

requirements" is misplaced. *See* Def.'s Opp'n at 11. Rather, the majority of post-*Spokeo*

decisions which have analyzed standing within the context of the FDCPA have determined that,

unlike the FCRA section at issue in *Spokeo*, which contains only procedural requirements, the

FDCPA creates a *substantive right*, the violation of which would itself give rise to a concrete

injury. *See, e.g.*, *Church*, 654 Fed. App'x at 995 & n. 2 (finding that "through the FDCPA,

Congress has created a new right—the right to receive the required disclosures in

communications governed by the FDCPA—and a new injury—not receiving such disclosure . . .

Thus Congress provided Church with a substantive right to receive certain disclosures and

Church has alleged that Accretive Health violated that substantive right."); *Zirogiannis*, 2016

WL 7410541, at *5-6 ("[A] debtor has an interest in receiving accurate information regarding the

amount of his debt, and courts analyzing Article III standing in the wake of *Spokeo* have held

that a violation of the FDCPA is sufficient to establish a concrete harm."); *Bautz*, 2016 WL

7422301, at *11 ("[T]he Court agrees with the weight of post-*Spokeo* authority holding that

Section 1692e of the FDCPA . . . creates a substantive right to be free from abusive debt

communications."); *Hill v. Accounts Receivable Servs., LLC*, No. CV 16-219 (DWF/BRT), 2016

WL 6462119, at *4 (D. Minn. Oct. 31, 2016) ("[T]he FDCPA creates rights, violations of which

may, in some circumstances, cause legally cognizable injury. Just as the *Church* court found that

§§ 1692e and 1692g establish a right to disclosure of information, the Court finds that § 1692e

establishes a right to truthful information regarding the collection of a debt and § 1692f

establishes a right to be free from the collection of unauthorized interest."); *Biber v. Pioneer*

*Credit Recovery, Inc.*, No. 1:16-CV-804, 2017 WL 118037, at *3 (E.D. Va. Jan. 11, 2017) ("Not

surprisingly, in the wake of *Spokeo*, the overwhelming majority of courts have held that FDCPA

claims similar to Biber's are sufficient to satisfy Article III's requirement that a plaintiff establish

an injury in fact. The underlying logic in these opinions is (i) that Congress, in the FDCPA, created a right to accurate debt-related information and non-abusive collection practices, and (ii) that a debt collector's false, misleading, deceptive, or abusive conduct concretely harms a debtor by detrimentally affecting that debtor's decisions regarding his debt."); *Kaymark v. Udren Law Offices, P.C.*, No. 13–419, 2016 WL 7187840, at *6–7 (W.D. Pa. Dec. 12, 2016) (plaintiff had standing to allege § 1692e claim because the complaint "alleged misrepresentation of the legal status and amount of [plaintiff's] debt itself" and the "alleged violation of [plaintiff's] right to truthful information and freedom of efforts to collect unauthorized debt constitute[d] a concrete injury"); *Long v. Fenton & McGarvey Law Firm P.S.C.*, No. 1:15-CV-01924, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016) (plaintiff had standing because "[p]laintiff allege[d] that she received deficient and misleading information regarding her debts, which is a harm defined and made cognizable by the FDCPA.") (internal quotations omitted)); *Bowse v. Portfolio Recovery Assocs., LLC*, No. 15 C 4037, 2016 WL 6476545, at *3 (N.D. Ill. Nov. 2, 2016) ("Because [plaintiff] has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, [plaintiff] has Article III standing to bring this suit."); *Hayes v. Convergent Healthcare Recoveries, Inc.*, No. 14–1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016) ("[A] violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15–1012, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury."); *Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14–cv–911, 2016 WL 4522822, at *2–3 (S.D. Miss. Aug. 26, 2016)

(alleged violation of § 1692e(8) represents a concrete injury); *Quinn*, 2016 WL 4264967, at \*3–5

(alleged violation of §§ 1692e(10)–(11) is a concrete injury); *Irvine v. I.C. Sys., Inc.*, No. 14-CV-

01329, 2016 WL 4196812 at \*3 (D. Colo. July 29, 2016) ("Through the FDCPA, Congress

created statutory legal rights to be free from certain abusive debt collection practices, . . . and a

debt collector's violation of those rights may constitute a concrete and particularized injury.")

(citation omitted); *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819, 2016 WL 5661525, at \*4

(W.D. Ky. Sept. 29, 2016) ("Macy and Stowe allege that GC Services violated [15 U.S.C. §

1692g] (a)(4) and (5) by sending them notices that failed to mention the in-writing requirement.

As a result of this omission, they claim, the least sophisticated debtor might make an oral request

instead, thereby waiving the protections of subsection (b). The complaint thus adequately

alleges injury in fact, and plaintiffs have standing to pursue their claims.").

     This Court agrees with the prevailing weight of authority and, as such, similarly finds that

15 U.S.C. §§ 1692e and 1692g — the statutory sections at issue in the present motion — confer

certain substantive rights, consisting of the right "to receive required disclosures in

communications governed by the FDCPA," *Church*, 654 Fed. App'x at 995, and the right "to be

free from abusive debt communications." *Bautz*, 2016 WL 7422301, at \*11. As such, the only

remaining issue at this stage of the proceedings is whether Plaintiff's proposed Amended

Complaint, accepted as true, sufficiently pleads the requisite injury-in-fact to establish Article III

standing. *See Zirogiannis*, 2016 WL 7410541, at \*5; *see also Bautz*, 2016 WL 7422301, at \*12

(recognizing that "[P]laintiff has pled a concrete interest for the purpose of Article III standing

based on her receipt of the IRS Language in the Letter because a material violation of FDCPA

Section 1692e infringes plaintiff's substantive statutory right to be free from abusive debt

practices.").

As stated above, Plaintiff's proposed Amended Complaint alleges violations arising under 15U.S.C. §§ 1692e and 1692g. Section 1692e states, in part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This section sets forth a non-exclusive list of actions that are deemed false, deceptive or misleading and thus run afoul of the statute. *Id.* (noting that "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section. . . ."). Likewise, Section 1692g sets forth certain information that a debt collector must convey in writing to a debtor when attempting to collect a debt. Specifically, this section provides that

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> **(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.  However, although communicating the above language to a debtor is necessary to comply with the statute, it does not follow that the provision of such language is in all cases sufficient to insulate a debt collector from liability.  "[E]ven if the debt collector's notice contains all the information required by statute, it will still violate Section 1692g if the letter also contains language that overshadows or contradicts other language informing a consumer of her rights."  *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 190 (2d Cir. 2002) (internal citation omitted); *see Vega*, 2005 WL 711657, at *6 ("Simply including the mandated validation notice in a debt collection letter is not enough to ensure compliance with the FDCPA. The validation notice must be clearly conveyed.  Therefore, if the debt collector includes other language that overshadows or contradicts the validation notice to the extent that it renders the notice ineffective, the debt collector violates § 1692g as a matter of law.")

Plaintiff has alleged that the October 2, 2015 notification letter violated these two statutory sections by:  (1) failing to "clearly" and "explicitly" set forth "the name of the creditor to whom the debt is owed," because the letter identified the debt collector as "SPRINT" and "there are more than one hundred (100) disparate entities registered in New York that begin their legal name with 'Sprint.'"  Therefore, "[t]he least sophisticated consumer would likely be confused as to which of the more than one hundred (100) disparate entities registered in New York that begin their legal name with 'Sprint' is the alleged creditor to whom the debt is owed." Am. Compl. ¶¶ 18-24; 32-34; (2) by using a "false, deceptive and misleading representation in its attempt to collect a debt," *id*. ¶ 64, namely, that the statement "YOU OWE: SPRINT," is "false" since "Plaintiff does not owe any money to an entity named 'Sprint'" and that "[t]he least sophisticated consumer would likely be deceived in a material way by Defendant's conduct." *Id*. ¶¶ 53-57.  In addition, Plaintiff claims that "[b]ecause the collection letter . . . is reasonably

susceptible to an inaccurate reading, as described in the First Count [of the Amended Complaint], it is deceptive within the meaning of 15 U.S.C. § 1692e." *Id.* ¶ 52; (3) adding to the letter the words "'AFTER YOUR RECEIPT OF GC SERVICES' INITIAL WRITTEN NOTICE TO YOU CONCERNING THIS DEBT,'" which "would lead the least sophisticated consumer to believe there was a prior initial written communication from Defendant." *Id.* ¶ 72. Specifically, Plaintiff claims that this statement, when read together with the surrounding language, would "confuse the least sophisticated consumer concerning the time frame to dispute the debt or seek validation of the debt" and would result in the "least sophisticated consumer [being] uncertain as to her rights." *Id.* ¶¶ 73-77; (4) failing to convey the amount of the debt clearly in light of the fact that the letter "fails to disclose whether the balance may increase due to interest and fees." Am. Compl. ¶¶ 84-89, 104. In particular, Plaintiff claims that "[t]he least sophisticated consumer would be confused as to how she could satisfy the debt" since a consumer "might believe she could pay the debt in full by remitting the sum stated in the letter at any time after she received the letter" but that "such a belief may or may not be correct, as Defendant has failed to disclose whether the balance may increase due to interest and fees." *Id.* ¶¶ 90-92. In light of this alleged ambiguity, Plaintiff asserts that "Defendant has violated § 1692g as it failed to clearly, explicitly and unambiguously convey the amount of the debt." *Id.* ¶ 105; and (5) failing to "disclose whether the balance may increase due to interest and fees" and therefore "[t]he least sophisticated consumer would likely be deceived by Defendant's conduct." *Id.* ¶¶ 106-114. As such, Plaintiff claims that "Defendant has violated § 1692e by using a false, deceptive and misleading representation in its attempt to collect a debt." *Id.* ¶ 117. *See also* Section II.A. *supra* (providing a full summary of Plaintiff's factual allegations). In addition, Plaintiff has alleged that he suffered actual damages based upon the underlying allegations in that

Defendant's actions caused him to: (1) "be distracted from his work;" (2) "lose time at work;" (3) "waste time;" and (4) "fight with his wife." *Id.* ¶¶ 118-127.

Although it is questionable whether Plaintiff will be able to *prove* these allegations at trial, that is a question for another day. At this juncture, the allegations in the proposed Amended Complaint, taken as true, illustrate that Plaintiff has adequately stated that he suffered a concrete injury sufficient to meet the injury-in-fact requirement in that he "was harmed by receiving a deficient and allegedly misleading communication from [Defendant]—a harm defined and made cognizable by the statute, but a concrete harm nonetheless. The alleged violations of the FDCPA in this case are concrete and particularized to [Plaintiff], and [therefore] he has Article III standing to bring suit." *Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016); *see Zirogiannis*, 2016 WL 7410541, at *5-6 ("Zirogiannis's allegations, accepted as true, establish that he suffered an injury in fact sufficient to confer Article III standing. Plaintiff alleges that he personally received the Collection Letter, and that the Collection Letter failed to convey statutorily required information. As a result, Plaintiff alleges that he was 'deprived of the information required to be provided by statute. . . .'") (internal citation omitted); *Bautz*, 2016 WL 7422301, at *12; *Macy*, 2016 WL 5661525, at *4 ("Macy and Stowe allege that GC Services violated [15 U.S.C. § 1692g] (a)(4) and (5) by sending them notices that failed to mention the in-writing requirement. As a result of this omission, they claim, the least sophisticated debtor might make an oral request instead, thereby waiving the protections of subsection (b). The complaint thus adequately alleges injury in fact, and plaintiffs have standing to pursue their claims.").

The Court has determined that (1) 15 U.S.C. §§ 1692(e) and 1692(g) confer certain substantive rights upon the Plaintiff; and (2) Plaintiff has set forth sufficient facts alleging a

violation of such rights based upon Defendant's purported failure to adhere to the FDCPA's statutory requirements.  Consequently, Plaintiff has met his burden at this stage to illustrate that he suffered an injury-in-fact sufficient to confer Article III standing.  *See Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-CV-3139, 2016 WL 5173392, at *9 (S.D.N.Y. Sept. 20, 2016) ("The statutes [at issue] create a substantive right for Plaintiff to have the satisfaction of mortgage timely filed, and Defendant violated that right.  Nothing more is required, here, to demonstrate an injury-in-fact.").

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the Complaint is GRANTED, in accordance with this Memorandum and Order.  Plaintiff is directed to serve and file his Amended Complaint within ten (10) days.

**SO ORDERED.**

Dated: Central Islip, New York
      March 23, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge